## THE STATE EX REL. *vs.* GARDNER.

[INFORMATION IN NATURE OF QUO WARRANTO, TO OUST PROBATE JUDGE FROM OFFICE AND DECLARE SAME VACANT.]

1. *Quo warranto; when writ does not lie.*—A person claiming to hold the office of probate judge, if eligible to hold such office at the time of his election, and legally elected and duly inducted into office, can not be removed from office on writ of *quo warranto*.

2. *Same; remedy for impeachable offense.*—But if such person has committed an impeachable offense, he must be impeached before the Senate. And if there shall be "any willful neglect of duty, or other reasonable cause, which shall not be a sufficient ground of impeachment," he must be removed by the Governor, "on the address of two-thirds of each house of the general assembly."

APPEAL from the Circuit Court of Butler.
Tried before Hon. PHILAMON O. HARPER.

Information in the nature of a *quo warranto*, at the suit of the State, on the relation of William Seawell, to oust S. S. Gardner from the office of judge of the probate court of Butler county, and have the same declared vacant.

The facts of the case are fully stated in the opinion.

THOS. J. JUDGE, for appellants.—Section 200 of the Revised Code declares some of the causes which vacate an office in this State. Among them are enumerated the following : "Any office in this State is vacated by the incumbent ceasing to be a resident of the State, or of the district, circuit or county, for which he was elected." And " in such other cases as are, or may be declared by law."

In addition to the acts which *vacate* an office, as specially declared in the Code, various grounds of *forfeiture* exist at the common law. For an enumeration of these causes of forfeiture, see Bacon's Abr., title " Offices and Officers," letter *M*, under the head, "Of the Forfeiture of an Office."

This court has made an adjudication upon this subject at the present term, in a case relating to a forfeiture of a judicial office.—See *Chisholm, Comptroller, v. Coleman*, in manuscript. And in some cases of forfeiture, the *cause* of forfeiture *ipso facto* vacates the office.—*Chisholm v. Coleman, supra.*

In the present case, the first count of the complaint avers that the office of judge of probate for Butler county became vacant, by the incumbent ceasing to reside in the county for which he was elected. And the second count avers, that the office became vacant by the incumbent's appointment to, and acceptance of, another office, so incompatible and inconsistent with the first office, that the two could not be executed by the same person ; and that this, *ipso facto*, vacated the first office. That this was the effect of the acceptance of the second office, if the two were incompatible, is sustained by the case of *Chisholm v. Coleman, supra,* and other authorities which will be hereafter cited.

If an office has become, in legal contemplation, vacant, or has been forfeited by an act which *ipso facto* vacates it, whoever attempts to exercise it, without legal authority, is a usurper and an intruder ; at least, in the language of subdivision 1, of section 3082 of the Revised Code, he "unlawfully holds or exercises the office."

In the present case, each count of the complaint, after showing a *vacancy* in the office in question, avers that the incumbent " *unlawfully holds and exercises the office;*" and

this gave the circuit court jurisdiction of the case, under section 3082 of the Revised Code, and subsequent sections relating to the same subject. The mode of procedure adopted, conforms to the requirements of the Code; though without these statutory provisions, the court would have had jurisdiction by the common law.

The court below overruled the demurrer as to the first count, and sustained the demurrer as to the second count; and this presents the question, whether or not the office of *judge of probate* of a county, and the office of *enrolling clerk* of the legislature, are so incompatible and inconsistent with each other, as that they can not be *legally* and *properly* exercised by the same person?

What is *incompatibility*, in legal contemplation?

"Offices are said to be incompatible and inconsistent so as not to be executed by the same person, when, from the multiplicity of business in them, they can not be exercised with care and ability."—Bacon's Abr., title "Offices and Officers," letter *K*.

"And this, my Lord Coke says, is of that importance, that if all offices, civil, ecclesiastical, &c., were only executed, each by a different person, it would be for the good of the commonwealth, advancement of justice, and preferment of deserving men."—Bacon's Abr., same title and letter.

This court judicially knows the duties of a probate judge, and of an enrolling clerk of the legislature; and that they, during the session of the legislature, can not be performed by one and the same person. "Judges of probate must keep their offices at the court-house, and open for the transaction of business at least on Mondays, Tuesdays and Saturdays of each week, except the 4th day of July and Christmas, from 9 in the morning until 4 in the afternoon, with an interval of one hour at noon."—Revised Code, § 788. They are, *ex officio,* judges of the county courts, and of the courts of county commissioners, and must preside at the terms of each. Indeed, their duties are multiform and various, and of the highest importance to the public; and, if the constant presence of any one officer, more than another, is required at the court-house of every county, it is the judge of probate.

The State v. Gardner.

The duties of enrolling clerk of the legislature are, during a session, arduous and highly important. He can not discharge his duties by deputy, but when one is needed, the legislature gives him an assistant; the court judicially knows that an assistant was furnished at the last session. He can not appoint a deputy to act for him, because his judgment and skill are relied on in the discharge of the duties. "A ministerial officer can not depute one in his stead, if the office be to be performed by him in person; but when nothing is required but a superintendency in the office, he may make a deputy."—Bacon's Abr., title "Offices and Officers," letter *L*.

No mere superintendency is required of the enrolling clerk. All bills which have been passed by the two houses have to be *enrolled*, and the enrolled bill signed by the presiding officer of each house; and if approved by the governor, they are to be signed by him, and then deposited, as laws, in the archives of the State. If bills be not correctly enrolled, serious consequences may ensue. And as each session advances, especially when it is drawing to a close, the duties of the enrolling clerk impose upon him the most arduous labor, and require of him the closest attention. These duties of the enrolling clerk have to be performed wherever the legislature may be in session, and are impossible of performance by him, if he be the probate judge of a distant county, and discharges his legal duties as such. And if he faithfully and properly discharges the duties of the former office, the duties of the latter must be omitted; they are wholly *incompatible and inconsistent* offices. "If conditions in law which are annexed to offices be not observed and fulfilled, the office is lost forever; for these conditions are as strong and binding as express conditions." Bacon's Abr., title "Offices and Officers," letter *M*.

The office of enrolling clerk, the court judicially knows, was established by the last legislature, and his compensation fixed at six dollars per day.

Did the acceptance of the office of enrolling clerk vacate the office of probate judge? It is clear upon authority that it did.—See Bacon's Abr., title "Offices and Officers," letter *K*, and cases there cited.

Lord Mansfield said, (3 Burrows, 1616,) that it seemed to him "*very strong*" that "if the two offices were incompatible, the acceptance of the latter would imply a *surrender* of the former."

And the leading case of *Milwards v. Thatcher*, (2 Term Rep. 81,) settles this question *directly* and *conclusively*. It was held in that case, that "a jurat of the corporation of Hastings may be elected town clerk of that corporation. But the two offices are incompatible, and the acceptance of the latter, *though an inferior office*, will vacate the former."

Ashurst, J., said, in the case above cited, that the acceptance of the latter does absolutely and *ipso facto* avoid the former, *although the superior office*, if they be incompatible."

Buller, J., in same case, said, "I have no doubt it was the plaintiff's intention to keep both offices; but if he be mistaken in the law, and choose to accept the last office, he must abide the consequences; for it is his own act."—See, also, *The People v. Carrique*, 2 Hill, 93; 1 Tomlin's Law Dic. 48.

The point attempted to be raised by the demurrer, that the circuit court had no jurisdiction of the case, in consequence of the provisions of the 12th section of the 4th article of the constitution, is wholly untenable. That section has always been in the constitution of the State, and has no application whatever to the present case, nor to any similar case. It would look odd to see the legislature making an address to the governor to remove a man from the office of judge, when the office was legally vacant, and the man sought to be removed was illegally holding, or exercising the office. Furthermore, the *limitation* of the tenure of the office, as made by that section, could never be construed, in a *State* constitution, to exclude all power in the legislature to legislate on the subject of ousting intruders and illegal holders of the office. But it is deemed unnecessary to say anything further on this point.

I conclude by respectfully calling the attention of the court to the agreement and request of counsel on both sides, written on the record.

The interest of the public—this is is not a private suit,

but one involving the interests of the public,—call for a decision at as early a day as practicable.

JOHN A. MINNIS, *contra.*—I insist that the complaint upon its face shows no cause of action, in either count, of which the circuit court has or can take jurisdiction; that the whole question of ousting from office or removal of judges, legally and constitutionally elected to, and duly installed in their offices, are, by the constitution of the State of Alabama, (except by impeachment,) confided alone to the governor, upon the address of two-thirds of the members of each house of the general assembly.

The constitution of the State of Alabama, article 6, section 1, provides for the judicial power of the State, and that it shall be vested in the Senate as a court for the trial of impeachments; a supreme court, circuit courts, chancery courts, courts of probate, and such inferior courts of law and equity as may be established by the legislature.

Article 6, section 12, expressly provides that the judges of the several courts of this State shall hold their office for the term of six years; and the right to hold his office for the full term hereby prescribed shall not be effected by any change hereafter made by law in a circuit or district, or in the mode or time of election; but for any willful neglect of duty, or any other reasonable cause which shall not be a sufficient ground of impeachment, the governor shall remove any judge on the address of two-thirds of each house of the general assembly, &c.

It certainly can not be pretended that the expression of the constitution, " for any willful neglect, or other reasonable cause," does not embrace every cause for which any judge can now, or ever could be, removed or ousted, by any proceeding or before any tribunal; then the express power given by the constitution to the governor, as expressly negatives that power anywhere else as if it had been so affirmatively expressed; *"expressio unius suppressio alterius"* is a maxim founded in reason, experience and logic, and everywhere recognized by the courts where applicable.—See *Sims & Jones v. Knox,* 18 Ala. 236; *Hamilton v. Williams,* 26 Ala. 527; *Miller & Wife v. Flournoy's Heirs,* 26 Ala. 724;

*Haley et al. v. Clark*, 26 Ala. 4ɔ9 ; No. 85 of the Federalist ; 1 Story Commentaries on the Constitution, p. 329, § 448 ; *Cohens v. Virginia*, 6 Wheaton, 375 and 401 ; *Mabury v. Madison*, 1 Cranch, 137 ; 1 Condensed R. 282.

It is believed no case can be found where the principles of this maxim have not been fully recognized by the court where applicable, whether applied to written contracts, deeds, statutes, or constitutions.

The court is particularly referred to the case of *Hamilton v. Williams*, 26 Ala. 527, and still more especially to the case of *Haley et al. v. Clark*, 26 Ala. 439, which it would seem should be held conclusive of this case. This was a case in which the legislature undertook to relieve against a fine or forfeiture. The court says : " The power to remit fines and forfeitures is confided by the State constitution to the governor alone, and cannot be exercised by the legislature, and, therefore, an act of the legislature which attempts, directly or indirectly, to remit a fine, either before or after it has been paid, is unconstitutional." The power to remove or oust judges being confided by the constitution to the governor alone, cannot be exercised by the legislature directly or indirectly, or by any other power in the government.

Article 4, section 23, of the State constitution provides for the impeachment of all officers of the State ; article 7, section 18, of the State constitution, providing for the appointment and removal of clerks ; article 6, section 13, State constitution, confiding to the legislature to fix the terms by law, of constables and justices of the peace ; article 5, section 21, providing for sheriffs, with other provisions in the constitution in relation to State officers. It does seem, when all these provisions are looked to as aids in construing the constitution on this subject, that it is plain that no other construction can be placed on it, and that such was the intention of the framers ; that this power of ousting or removing judges was confided by the constitution to the governor alone, to be exercised in the manner therein prescribed.

But it was argued on part of plaintiffs, that whilst the constitution of the United States is an instrument con-

ferring powers, and is limited to the powers conferred, the constitution of a State is one limiting powers, and all powers not restricted by the constitution are rightfully in the legislature; and that, by the 5th section of article 6, of the constitution of the State, " The circuit court shall have original jurisdiction in all matters, civil and criminal, within the State."

. That the trial of forfeiture of office by *quo warranto*, and proceedings upon information in the nature of *quo warranto*, are matters of common-law jurisdiction, and hence, the constitution conferring power on the governor to remove, is no restriction on the common-law jurisdiction of the circuit courts. I answer—1st. Section 5, article 6, of the constitution, provides : " The circuit court shall have original jurisdiction in all matters civil and criminal, within the State, not otherwise excepted in the constitution." I have already shown how the removal of judges is excepted. Then, I insist, that so far from this section of the constitution conferring this power on the circuit courts, it shows conclusively, it was withheld; if there could possibly exist (when we look to all the other provisions) a doubt, this provision of the constitution would settle that doubt. If this power of removal of judges, confided expressly by the constitution to the governor, is not one of the matters excepted, then it will be, I think, hard to find in the constitution what is the matter excepted. It is respectfully submitted that there is no matter of common-law jurisdiction so expressly excepted in the whole constitution as is this matter of removal of judges. The truth is, when we examine carefully all the provisions of the constitution having relation to this subject, there is a perspicuity and harmony with itself, with well established rules and maxims, with well settled principles, and former adjudications, seldom to be met with in such instruments.

2. I insist that this idea, if fully admitted, of conferring power in the one case, and limiting in the other, has really no influence upon this question, the convention that framed the constitution, it will not be denied, had the right to confide this power of removal upon the governor, upon

16

such terms as it saw proper. *. It is already shown that the convention, in the exercise of that right, did confide the power to the governor, and hence, it is entirely needless to enter into a discussion upon that inexhaustible subject— the difference between the powers of a State and the national constitution.

It is insisted by plaintiffs, that the case of *Burkett v. Ala. & Fla. R. R. Co.*, decided in this court at the January term, 1868, is a case in point, and against the view I have taken in this case.

This is a case where the circuit judge, being incompetent, a lawyer under § 758 of the Code, presided and tried the case ; this the court held constitutional, and in the opinion, the court says if this could not be done, parties litigant in court could not get a trial, and the learned judge who delivered the opinion, goes on to say that if this could not be done, then the legislature would have no power to create arbitrations, and that even common-law arbitrations would be unconstitutional.    Now, the court must see that the reasoning of the learned judge in relation to arbitrations is entirely erroneous.    Arbitrations, so far as they partake of the attributes of a court, are inferior courts, and are expressly provided for by the constitution.    Then, I insist this authority has very little, if any application to this case ; that it is of doubtful authority, being one of those cases decided from an apparent necessity to sustain a law of very doubtful constitutionality ; that it can scarcely be sustained upon principle ; it really settles no principle, and certainly never to be carried any farther, and from which it is hard to deduce any principle ; and if good as authority at all, only in cases of precisely like character.

The case of *Sprowl v. Lawrence*, 33 Ala. 674, was referred to in the argument below.    The only thing in that case that can have the most remote bearing on this case, is, the court decides in that case, that in cases of officers who omit or commit acts which it is declared by law shall vacate the office, does not *per se* operate his instantaneous removal from office, but only renders him liable to a proceeding for the forfeiture of the office.    This adjudication was in relation to a sheriff who, under the constitution and

Weaver et al. v. Lapsley.

law of the State, if he had forfeited his office, might be proceeded against in the circuit court, but there is no such intimation as to judges whose removal is provided for by the constitution.

The case of *The State, ex rel. the Attorney General v. Porter*, 1 Ala. 688, is relied on by the plaintiffs to sustain the jurisdiction of the circuit court in this case. The case against Porter was on information in the nature of a *quo warranto*, commenced in the supreme court, on the grounds that Judge Porter was constitutionally ineligible when elected, and whilst the soundness of this decision is much doubted, still it does not militate against any position taken by me in this case ; in fact, on page 698, it fully sustains the position above insisted upon by the defendant. The court, in commenting on the case of *The State, ex rel. &c. v. Paul*, says : "This conclusion could only have been obtained by a misapplication of the maxim, "*expressio unius exclusio est alterius*," thereby recognizing the maxim, but commenting upon its misapplication ; and the court immediately following, goes on to say: "It is true, the grant of power to the two houses to elect, is equivalent to an express denial of it to any other branch of the government, &c." Then, upon the very same reasoning, I insist the grant of power to the governor, upon the address of two-thirds of the members of each house of the general assembly, to remove judges, is equivalent to an express denial of it to any other branch of the government; and that every authority that has been referred to, when carefully examined, establishes the position I started out with. But it has been said, that this is a proceeding not to remove, but to have the office adjudged vacated.

To this, I answer—1. The complaint in both counts shows that the defendant was duly, on the 3d of November, 1868, installed in the office of probate judge of Butler county, and that he has ever since, and still is, performing the duties pertaining to the same. How then, I ask, can it be vacant?

An office in the sense here used, is not the house in, or the place where the business is done. It is the right to have charge of, and to peform certain duties, and for such service to receive certain fees and emoluments. This, the

complaint clearly shows, Judge Gardner continued to do. It is true, the complaint charges the defendant with acts of commission and omission, which, it is charged, vacates his office, but this charge, like a charge of fraud, does not make it so. The court will look to the acts charged. When this is done, it will be seen clearly by the court, the office has not been vacated; at most, take the charges all as true, the defendant has only been guilty of acts of omission or commission, which, by law, authorizes a forfeiture of, ousting or removing from, his office, and hence, the court is asked for a judgment of ouster from, and, as a sequence, that the office be declared vacant. Acts of omission or commission of officers, which, it is declared by law, shall vacate the office, does not *per se operate* his instantaneous removal from office, but only renders him liable to a proceeding for the forfeiture of the office.—*Sprowl v. Lawrence*, 33 Ala. 674. And if Judge Gardner has committed any such act, he must be proceeded against under the constitution.

If the plaintiffs can make the office vacant, to keep clear of the rocks of Scylla, they necessaily run into the whirlpool of Charybdis; to avoid the constitutional mode of removal of a judge from office, they present the absurdity of a proceeding to adjudge a vacancy.

I maintain, there is no law by statute, or otherwise, in the Code, in any adjudicated case, or in the work of any elementary writer, authorizing a proceeding to declare any tenement or hereditament corporeal, or incorporeal, vacant; as well might the owner institute a proceeding against some former occupier, who had vacated, to have a judgment of court declaring his premises vacant. I insist, such a proceeding is without precedent in the whole history of judicial preceedings.

If the office of judge of probate of Butler county has been vacated by removal, then section 207, article 7, chapter 1, title 5, part 1, page 128, of the Code of Alabama, provides how it shall be brought to the notice of the governor; and article 6, section 11 of the constitution, provides for the governor filling the vacancy, still showing a perfect harmony of every part of the constitution confided to the governor. The proceedings under

part 3, title 2, chapter 5, page 599, of the Code of Alabama, under which, I presume, this proceeding is instituted, I insist, does not, and was not, intended to embrace any case of officers whose removal is provided for by the constitution, but for a large class upon whose removal the constitution is silent, or provides, they shall be removed for cause, and in such manner as may be provided by law.

The whole proceeding, under this chapter and every section, shows the proceedings are to oust, remove from, or take away something. Section 3082, paragraph 2. When any person usurps, intrudes into, or unlawfully holds, or exercises any public office, &c.

Paragraph 2. When any public officer has done or suffered an act by which, by law, he forfeits his office in these cases, this proceeding is never resorted to, to adjudge a vacancy. As well might the legislature provide for bringing suit for a thing already restored. The restoration, it is true, will not deprive the owner from a suit for damages; neither would the vacating an office deprive an injured party from suing for damages, but certainly no suit can be maintained in either case for the thing restored, or office vacated.

The judgment in section 3093—the exclusion from office— shows it was not vacant. Who ever heard, or, in his philosophy, dreamed of a court rendering a judgment excluding a man from a vacant office!

Upon the second count, I maintain, there is no such office as enrolling clerk to the legislature, known to the law; that the position of Judge Gardner, as enrolling clerk, is a position of employment, and not an office. If an office at all, it is a public office.

All offices are employments, but all public employments, even, are not offices. And now, what is to distinguish an office from an employment? Bacon, in his Abridgment, title Office, A, says: " The word *officium,* principally implies a duty, and, in the next place, the discharge of such duty; and that it is a rule that, when one man hath to do with another's affairs, *against his will, and without his leave,* that this is an office, and he who is in it, is an officer." Upon this point, the court is respectfully

referred to the constitution. All officers may be impeached. Surely, this position is not one liable to impeachment.

Jacobs' Law Dictionary, vol. 4, page 433, gives precisely the same definition, and in this definition seems to be the only clear distinction between an official position and one of employment, and according to that, this was clearly no office. The court will judicially know there is no such office as enrolling clerk. 1st. The position is merely clerical. 2d. The defendant was employed by a mere resolution of the house; no law or resolution passed by both houses so as to make it a legislative act. 3d. There was no official responsibility of bond, or oath required, given or taken, and no official duties prescribed for, or attached to the position, either by the resolution by which he was employed, or any law of the State.

Then, it would seem too clear for argument, that this was not an office.

If an office, then, it is one, the duties of which, under the common law, are not incompatible with that of probate judge. Many common law authorities have been referred to and quoted, to show that the office of enrolling clerk is incompatible with that of probate judge. In all the argument upon this point, with the application of the authorities, the plaintiffs keep in mind that the office of probate judge belongs to Butler county, and the duties of enrolling clerk are to be performed in Montgomery, and hence, as the duties to be performed by the probate judge in Butler county, are to be performed at the same time that the duties are required to be performed by enrolling clerk at Montgomery, there is an incompatibility. They say in this, that the same man cannot be in both places at the same time, to discharge the duties of both offices. Although this position, at first blush, looks plausible, still it is not sound.

The incompatibility must be in the officers themselves. The character of the officers, that is, *the duties* to be performed in one, must be inconsistent with the duties required by the other. If, in attending to the one, the officer neglects the other, he is liable for such neglect in such manner as the law has prescribed, and to be removed in

such manner as the *constitution*, in this case, has prescribed. This is believed to be what the common law means by incompatibility, but it is admitted, when we look to all the common-law decisions and elementary writers as to what is an office, and what offices are incompatible, there is no branch of the law left in greater obscurity and uncertainty.

But there is no branch of the common law of England less adapted to suit our condition and institutions, than that branch relating to offices and officers ; the very source from which they are derived, the tenures by which they are held, and many of the principles by which they are controlled, are totally incompatible with our institutions.

Article 4, section 20, provides fully as to members of the general assembly.

Article 5, section 14, provides as to governor.

Article 6, section 9, provides for the powers of the general assembly, to establish probate courts in each county.

Article 6, section 10, provides : "The judges of the supreme court, circuit court, and courts of chancery, shall, at stated times, receive for their services a compensation, which shall not be diminished during their continuance in office, but they shall receive no fees or perquisites, nor hold any office (except judicial offices) of profit or trust, under this State, or the United States, during the term for which they have been elected, or under any other power during their continuance in office, and immediately following."

Section II provides by whom, and when, judges of the supreme court, circuit courts, courts of chancery, and judges of probate, shall be elected, &c., but, as to probate judges, says nothing in any of these sections as to their receiving other emoluments, or holding office. Then, the express affirmation provisions, prohibiting the judges named from holding any other office, or receiving other emoluments, is as expressly a negation of such a provision, as to probate judges, as if it had been so expressly stated, *expressio unius suppressio alterius.*"

Passing from the constitution to the Code, part 1, title 5, chapter 1, article 1, section 144, Office and Officers, paragraph 7, members of Congress and persons holding any office of profit or trust, under foreign government, either of

the States of this Union, or under the United States, other than the office of post-master, are prohibited from holding office. Then the statute, having fixed expressly what offices are incompatible, excludes all others, *expressio unius suppressio alterius*. I am not aware of any other ineligibility or incompatibility, either by the constitution or by the statute. Then, upon this point there can be no doubt that the circuit court committed no error in sustaining the *demurrer*, and, if we are right in this, the plaintiffs having taken non-suit on the first count, there is an end to this case. The judgment below must be sustained, and this court will refuse to set aside the non-suit.

Then, in conclusion for the defendant, I maintain—1st That whatever the jurisdiction of the circuit courts may be, in cases where the office of judge may be usurped, or where the judge claiming to be elected is constitutionally ineligible, and in all that class of cases; yet, that where a judge has been legally and constitutionally elected, and is constitutionally eligible to the office, is duly installed into his office, as long as he is performing the duties of his office, and during his term of office, he cannot be ousted or removed from office for any wilful neglect of duty, or other cause, except by impeachment, or by the governor, upon the address of two·thirds of the members of each house of the general assembly.

2d. That a proceeding by information, in the nature of a *quo warranto*, in the circuit court, will not lie for a vacant office.

3d. That the position of enrolling clerk to the legislature, is not an office in contemplation of law.

4th. If said position is a public office, then it is not, under the constitution and laws of Alabama, such an office as is compatible to hold, at the same time of holding the office of probate judge; the one does not render ineligible to the other.

Any one of these positions are conclusive for *defendant*, upon the whole case as it now stands.

PETERS, J.—The complaint in this case contains two counts. The first recites, that Samuel S. Gardner, on the

31st day of July, 1868, was duly installed into the office of judge of probate, in and for the county of Butler, in this State; that he acted as such in said county from that day to the 3d day of November, 1868, when he left the county and has not since resided within the limits thereof, nor held any courts therein, nor performed any official acts whatever within said county, but has continually since resided, and still resides, in the county of Montgomery, in said State, and has failed and neglected, and still fails and neglects, to discharge, within the limits of said county of Butler, the duties of the office of probate judge thereof, by means of which, said office has been vacated, and is now vacated; and yet, notwithstanding, said Gardner now unlawfully claims to be the judge of probate of said county of Butler, and unlawfully holds and exercises the duties of said office without the limits thereof; and that, since said judge of probate has so left said county of Butler, and whilst residing in said county of Montgomery, he has granted and issued marriage licenses, and performed other acts as such judge of probate, which are particularly set out in said complaint. The second count is mainly a repetition of the first, except as to the *gravamen* of the charge, which is, that the accused was elected or appointed to the office of enrolling clerk of the house of representatives of the legislature of Alabama, (a public and lucrative office in this State,) then in session; which office said accused had accepted, and had entered upon the exercises and duties thereof, and exercised the same until the adjournment of said legislature *sine die*. That the duties of said office of enrolling clerk are incompatible with the duties of the office of judge of probate, and said offices can not be held by one and the same person, at one and the same time, and that the acceptance of the said office of enrolling clerk, *ipso facto* vacated the office of judge of probate for said county of Butler: wherefore, the plaintiffs claim a judgment of ouster against said accused, and a judgment declaring said office to be vacant. The writ is dated on the 5th day of January, 1869. There was a demurrer to both counts of this complaint. That to the first count was overruled, but that to the second count was sustained. Upon

this, the plaintiffs below, who are appellants in this court, excepted to the ruling of the court upon the demurrer to the second count, and tendered their bill of exceptions to reverse the same, which was signed, sealed and dated by the presiding judge, as required by law. Thereupon they took a non-suit and appealed to this court, and here assign for error the ruling of the court below on the demurrer to the second count of the complaint.

The view which we take of this case, does not require a very rigid examination of the pleadings in the court below. We think that the plaintiffs wholly mistook their remedy, and that a *quo warranto* does not lie upon the facts stated in the complaint in this case. A *quo warranto* only lies against a person claiming to be probate judge, who was never duly and legally inducted into the office,—a person who was incompetent to hold the office from the first. If the person claiming to hold the office was ineligible at first, and was lawfully inducted into office, then he can not be ousted in this way. The case of *The State, ex rel., v. Porter*, was different from this. Here Judge Gardner was legally elected probate judge of Butler county, and was eligible to be such judge when elected, and was duly inducted into his office as such, within the time and manner prescribed by law. But Judge Porter was not. He was incompetent to hold the office at the time of his election.— *The State, ex rel., v. Porter*, 1 Ala. 688. When a judge is once inducted into office, and is competent to hold it when elected, he can only be ousted or removed in the manner prescribed by the constitution of the State. If he has been guilty of an impeachable offense, he must be impeached before the senate. If he has been guilty of an offense "for any willful neglect of duty, or any other reasonable cause which shall not be a sufficient ground of impeachment," he must be removed by the governor, "on the address of two-thirds of each house of the general assembly." Const. of Ala., art. 4, § 23 ; *ib.* art. 6, §§ 1, 23. These articles of the constitution clearly vest in certain departments of the government the jurisdiction to try impeachments, and to try applications for removal of judges from office in this State. This makes the jurisdiction exclusive, and no

other tribunal can exercise the powers thus conferred, except those departments of the government mentioned in the constitution itself. *Expressio unius est exclusio alterius,* is a maxim acknowledged by this court to be a rule of law as well as of logic. This forbids a different construction of the constitution than that here insisted on.—Broom's Max. 505 ; *The State, ex rel. v. Porter,* 1 Ala. R. 688, 698 ; *Hamilton v. Williams,* 26 Ala. 527, 531 ; *Haley v. Clark,* 26 Ala. 439 ; Const. of Ala., art. 3, §§ 1, 2. Although it may not be necessary to discuss the question raised upon the appointment of Judge Gardner as enrolling clerk of the house of representatives, yet it may be said, that we do not deem it an office, in the technical sense of that term. Any others of the persons employed by the legislature, or authorized by them to be employed about the capitol, such as watchmen, fire-builders, or sweepers of the halls, might just as well be styled officers as such a clerk. It is but an employment, not an office. "All the State officers may be impeached for any misdemeanor in office."—Const. of Ala., art. 4, § 23. It would be ridiculous to talk of impeaching a watchman, or a fire-builder, as State officers. The remedy against such persons is to remove them at once, by the house of the general assembly, giving the appointment. These persons can not be removed by the courts upon *quo warranto*. The same may be said of the enrolling clerk, as such officers are controlled and discharged by the general assembly, or by the house appointing them.

There is, then, no error in the judgment of the circuit court, and it is affirmed ; the *quo warranto* is dismissed, and the said appellant, Sewell, and his securities on his appeal bond, are taxed with the costs in this court and in the court below.