Under Const. art. 6, §§ 2, 17, Laws 1880, p. 521, c. 354, Code Civ. Proc. § 220, and Laws 1901, p. 589, c. 466 (Rev. Charter Greater New York, § 1383), vesting in the Appellate Division the authority to remove judges and justices of inferior courts, a judicial officer may not be removed merely for making an erroneous decision, but may be removed for willfully making a wrong decision, for a reckless exercise of his judicial functions without regard to the rights of litigants, or for manifesting friendship or favoritism toward one party or his attorney to the prejudice of another.

2. SAME—REMOVAL FROM DISTRICT.

Under the authority thus given, and under Laws 1901, p. 576, c. 466, § 1353, providing that a Municipal Court justice shall be a resident and elector of the district for which he is elected or appointed, and devote his entire time to his official duties, and Laws 1892, p. 1656, c. 681, declaring that every office shall be vacant upon the incumbent's ceasing to be an inhabitant of the political division of which he is required to be a resident, the Appellate Division is justified in removing a justice of the Municipal Court who has ceased to be an inhabitant of the district in which he was elected.

3. MUNICIPAL COURTS—TIME OF SESSIONS—RULES.

Under Laws 1902, p. 1495, c. 580 (Municipal Court Act, § 17), providing that court shall be held at such hours in every judicial day, or so often as the board of justices of the Municipal Court may direct, rules enacted by the board as to the frequency and hours of sessions of court have the force of law, and are binding on the individual justices.

4. SAME—FAVORITISM.

The action of a justice of the Municipal Court in favoring certain attorneys by granting repeated and unauthorized adjournments, refusing to allow objections and exceptions to be noted, omitting evidence, objections. and exceptions from returns on appeal, granting without authority ex parte orders in actions in other districts, making illegal entries and alterations in court records, adding causes to the calendar in violation of a rule of court, exercising jurisdiction after it had been shown that process had not been served, refusing judgments on verified complaints in default of verified answers, and consulting privately with counsel and parties as to the disposition of applications, is cause for the removal of the justice, though such favoritism was not the result of bribery.

5. SAME—PRODUCTION OF BOOKS AND PAPERS—EX PARTE APPLICATION.

Under Municipal Court Act, § 165 (Laws 1902, p. 1542, c. 580), empowering the "court" to order the exhibition of an account or writing declared on, and Municipal Court Rule 15, providing that ex parte applications may be made to any "justice," a justice in one district has no authority to grant ex parte an application for the exhibition of books and papers in an action in another district.

Application for the removal of Herman Bolte from the office of justice of the Municipal Court, City of New York, Borough of Manhattan, Second District. Application granted.

This is an application for the removal of Herman Bolte from the office of justice of the Municipal Court, Borough of Manhattan, Second District. The

proceeding was instituted by an order to show cause granted on the 12th day of June, 1903, upon the verified petition of the district attorney, accompanied by charges and specifications filed that day. Pursuant to the requirements of the order, the respondent filed an answer to the charge on the 22d day of June, 1903, joining issue thereon, and appeared on the following day, which was designated for the public hearing. His counsel then moved to dismiss the charges as a whole and separately for insufficiency. Decision was reserved, and the proceeding adjourned until July 2d, at which time the court granted the motion to dismiss the third charge, relating to matters that occurred prior to the respondent's election and denied the motion in other respects. The matter was then referred to William H. Willis, Esq., as a referee, to take and report the evidence, together with his opinion thereon. The charges and specifications thereof upon which the respondent was placed on trial are as follows:

"First. That the said Herman Bolte now is, and at all the times hereinafter mentioned was, a justice of the Municipal Court of the City of New York, Borough of Manhattan, Second District. That the said Herman Bolte does not devote his whole time and capacity to the duties of the said office of justice, as required by section 1353 of the Greater New York Charter, and by rules 1 and 2 of the Municipal Court Rules of the city of New York, and that he does not continue sessions of his court as long as the public interest requires, in violation of section 17 of the Municipal Court Act, to the great prejudice and discomfort of litigants, witnesses, and attorneys.

"Specification 1. That on February 2, 5, 6, 9, 10, 13, 18, 19, 20, 25, 27, March 2, April 9, May 5, 8, 14, June 9, 1903, and on other days, the said Herman Bolte did not open court until after 10:30 o'clock in the forenoon, although there were about one hundred cases on the calendar each day, and the parties and their attorneys were compelled to wait for the said Herman Bolte to open court. That on February 16 and May 8, 1903, the said Herman Bolte opened court at 1 o'clock in the afternoon, and that on March 11, 1903, the said Herman Bolte did not open court until 11 o'clock in the forenoon. That on May 14, 1903, the said Herman Bolte adjourned the afternoon session of his court to 2:30 o'clock in the afternoon, but did not return at said hour, and the court was adjourned for the day by the clerk.

"Specification 2. That on February 4, 11, 17, March 24, 27, April 1, 2, 5, May 20, 27, June 3, 1903, and on other days, said days not being legal holidays, the said Herman Bolte absented himself from his court the entire day on each of said days. That he is usually absent from his court on Wednesday, in spite of the crowded condition of his calendar.

"Specification 3. That during the months of February, March, April, and May, 1903, the said Herman Bolte did not continue the sessions of his court as long as the public interest required, but would adjourn court before 4 o'clock in the afternoon, and postpone the trial of cases marked ready for that day to other days, to the great discomfort and prejudice of persons whose cases were marked ready for trial by the said Herman Bolte.

#### "Charge 2.

"That said Herman Bolte has ceased to be an inhabitant of the Municipal Court of the City of New York, Borough of Manhattan, Second District, of which court he has been elected justice, in violation of chapter 681 of the Laws of 1892, of the state of New York, and during the years 1902 and 1903 has removed his residence from the said Second District of the city of New York, borough of Manhattan, and has ceased to be an inhabitant of the said district, and has changed his residence to the village of White Plains, in the county of Westchester, in the state of New York."

#### "Charge 4.

"That said Herman Bolte knowingly permits persons not regularly admitted to practice as attorneys and counselors at law in the courts of record of the state of New York to practice in his court, in violation of section 63 of the Code of Civil Procedure of the state of New York.

"Specification 1. That while sitting as justice in the Municipal Court in the City of New York, Borough of Manhattan, Fourth District, on July 23, 1901,

in the case of Kaplan v. Berman, he allowed and permitted one Max L. Levine to appear and try the case on behalf of the defendant, in spite of the objection of Leo Lerner, Esq., the plaintiff's attorney therein, to the appearance of said Max Levine on the ground that he was not an attorney; and that the said Herman Bolte, disregarding said objections, allowed the trial to proceed, and decided in favor of the defendant; that the said judgment was thereafter reversed by the Appellate Term of New York County on the ground of the aforesaid illegal appearance of the said Max S. Levine.

"Specification 2. That the said Herman Bolte subsequently well knowing that the said Levine was not an attorney at law, and was not a party to the said actions, permitted the said Max S. Levine to appear before him and to act as attorney in the Municipal Court of the City of New York, Borough of Manhattan, Second District, in the following said cases and on the following days: February 3, 1903, Tinglio v. Masilo; February 6, 1903, Feinberg v. Variano; February 6, 1903, Feinberg v. Vichino; February 6, 1903, Feinberg v. Wagner; March 30, 1903, Farforis v. Rodeas; March 31, 1903, Farforis v. Rodeas: April 6, 1903, Rosano v. Volk; April 16, 1903, Bresnik v. Shaw.

"Specification 3. That during the months of February, March, April, May, and June, 1903, the said Herman Bolte allowed one Max Brinn to appear and practice as an attorney before him, with full knowledge of the fact that said Max Brinn had not been admitted to practice as an attorney and counselor at law.

### "Charge 5.

"That the said Herman Bolte knowingly permits clerks to appear and answer cases before him, which clerks have not filed their certificate of clerkship with the clerk of the Court of Appeals of the State of New York, as required by rule 21 of the Municipal Court Rules.

"Specification 1. That the said Herman Bolte knowingly permitted one Jacob Rosenberg, a clerk in the office of Marks & Marks, attorneys, to appear and answer cases before him during the months of February, March, April, and May, 1903, although the said Jacob Rosenberg is a little boy of about 15 years of age, and has not filed his certificate of clerkship with the clerk of the Court of Appeals of the State of New York, and was manifestly incapable of filing such certificate, because the said Jacob Rosenberg had not at that time attained the age of 18 years.

### "Charge 6.

"That the said Herman Bolte is incompetent and unfit to perform the duties of a justice of the Municipal Court of the City of New York, in that he unjustly, partially, and oppressively decides cases in which the attorneys hereafter named appear for either of the parties contrary to the law and contrary to the evidence in the case, in favor of the parties represented by said attorneys, or either of them, and corruptly decides cases in favor of persons friendly to him.

"Specification 1. That the cases of City of New York v. Watt and City of New York v. Seton et al. were tried before the said Herman Bolte on October and November, 1902, and the case of City of New York v. Boldt, which case was tried before the said Herman Bolte on October, 1902. These were all actions to recover a penalty from the defendants for obstructing the sidewalk on Broadway, and the evidence was substantially the same in all the cases. The said Herman Bolte gave judgment for the defendant in the case of City of New York v. Watt and in the case of City of New York v. Boldt, while he gave judgment for the defendant in the case of City of New York v. Seton et al.; one Aaron Morris appearing as counsel for the defendant in the case last named, but not appearing in the other cases.

"Specification 2. That in the case of the City of New York v. Horton Ice Cream Company, tried before said Herman Bolte on the 10th day of November, 1902, which was an action to recover a penalty of $10 for obstructing the sidewalk, the defendant defaulted, but the said Herman Bolte refused to give judgment for the plaintiff at the end of plaintiff's case, stating to the police officer who testified as to the obstruction of the sidewalk by the defendant substantially as follows: 'What are you talking about? I live right next door to defendant, and I know that they are law-abiding citizens.'

"Specification 3. That in the case of the Egyptian Cigarette Co. v. Charles Comisky, Aaron Morris appeared as defendant's attorney. The action was to recover money remaining in the hands of the defendant, as marshal, after a sale on an execution obtained against the plaintiff. The said Herman Bolte decided in favor of the plaintiff for the sum of $40, and the decision was reversed by the Appellate Term, which adjudged that the defendant should return $90. On the second trial before the said Herman Bolte, upon a state of facts substantially identical with that appearing on the first trial, judgment was given for defendant, with $10 costs, upon the sole ground, as stated by the court, that it would not take judicial notice that the said Charles Comisky was a marshal of the said Second District Court, and that evidence of that fact was lacking. That a motion to allow plaintiff to introduce in evidence the testimony of the stenographer of the first trial that the defendant Comisky admitted his appointment as marshal was overruled, with $10 costs. That in the case of Stromberg v. Cavalluzzi, Aaron Morris appearing as attorney for the plaintiff, a motion was made by the defendant to set aside the summons and the judgment obtained against him by default and the body execution issued pursuant thereto on the ground that the certificate of service of summons on the defendant signed by Charles Comisky did not have the word 'Marshal' added thereto. That on April 16, 1903, the said Herman Bolte denied said motion, and refused to set aside the judgment and liberate the defendant from the New York county jail, on the ground that he would take 'judicial notice' of the fact that the said Charles Comisky is a marshal, and that he would take 'judicial notice' of the signature of the said Charles Comisky, although his previous ruling in the case of Egyptian Cigarette Co. v. Comisky was called to his attention.

### "Charge 7.

"That said Herman Bolte willfully and corruptly refuses to follow the rulings of the Appellate Term in cases tried before him for the second time, if any of his friends, the attorneys hereinafter named, are retained as attorneys or counsel.

"Specification 1. That on October 21, 1901, in the case of Nicholas J. Mullin v. Meyer L. Sire, tried before the said Herman Bolte in the Tenth Municipal Court, and in which Mayer Greenberg appeared as counsel for the defendant, said Herman Bolte refused to receive the evidence of one Amar, a material witness, despite the opinion of the Appellate Term that the testimony of said Amar should be admitted.

### "Charge 8.

"That the said Herman Bolte has become incompetent and unfit to perform the duties of a justice of the Municipal Court of the City of New York, in that he decides cases in which any of the attorneys hereinafter named in charge 9 appear contrary to the law and contrary to the evidence in the case.

"Specification 1. That on April 1, 1902, in the case of Larken v. Walker, the said Herman Bolte gave judgment for the plaintiff for the sum of $185, contrary to the law and contrary to the evidence in the case, in that the defendant produced in evidence a letter written by the plaintiff admitting the defendant's debt to be only $18.99; Elias Rosenthal being the attorney of record for the plaintiff in said action. That the said Herman Bolte permitted and allowed the record in the said action to be changed, without notice to the defendant or his attorney, from 'an action for goods sold and delivered and money loaned' to 'money obtained by fraud and deceit'; the plaintiff having learned after the commencement of the action that the defendant was an infant.

### "Charge 9.

"That the said Herman Bolte knowingly and continually permits friends of his, to wit, Aaron Morris, Mayer Greenberg, Max D. Steuer, Max S. Levine, Elias Rosenthal, and Israel M. Lerner and others, to institute in his court suits·in which the parties in interest reside outside of the boundaries of the Municipal Court district; and that he knowingly permits the parties represented by said attorneys to assign their cases to persons who have no interest in the actions brought in their name, in violation of section 1370 of Greater

New York Charter and of subdivision 1 of section 25 of the Municipal Court Act.

"Specification 1. That almost all the actions brought by Aaron Morris, Brinn & Goldberg, Elias Rosenthal, Israel M. Lerner, Marks & Marks, are assigned to parties for no consideration, and who have no interest whatever in the case, for the sole purpose of bringing this action before said Herman Bolte. That the real parties to the actions brought by the above-named attorneys reside outside the boundaries of the said court, and said actions are wrongfully brought in the said court, with the intent and for the purpose of trying them before the said Herman Bolte.

"Specification 2. That Israel M. Lerner causes a large number of the actions in which he appears to be assigned to one Goldberg and to one Weinberg for the sole purpose of bringing said actions before said Herman Bolte. That on March 31, 1903, Emil A. Klein, Esq., and A. D. Levy, Esq., appeared as attorneys for the defendants before Herman Bolte in two different actions in which the said Weinberg was plaintiff and the said Israel M. Lerner, the plaintiff's attorney, and duly demanded that their cases be transferred to the proper District Court, which request was refused. That the said Israel M. Lerner had six actions before the said Herman Bolte on the said 31st day of March, 1903, which were all brought in the name of Weinberg as plaintiff assignee. That the same practice is followed by all the attorneys hereinbefore named.

### "Charge 10.

"That the said Herman Bolte corruptly refused to transfer actions brought by the attorneys above named upon the demand of the defendants to such actions when made on the return day of the summons as prescribed by section 1370 of the Greater New York Charter and section 25 of the Municipal Court Act. That he, the said Herman Bolte, refuses to indorse such demands for transfer on the record, and that he refuses to receive and file the affidavits, and that he refuses corruptly to approve the undertaking given by the defendants in support of their demands and transfer cases to the City Court of the City of New York, and that such defendants are compelled to apply to the Supreme Court of the State of New York, New York County, for writs of mandamus directed to the said Herman Bolte ordering and directing him to receive and file such affidavits.

"Specification 1. That on February 14, 1900, in the case of Warren H. Jeffers v. Charles Goldstein, the said Herman Bolte wrongfully refused to approve the undertaking given on behalf of the said Goldstein in support of a demand for a transfer of his case to the City Court, although the said undertaking complied in all respects with the forms of law.

"Specification 2. That on June 22, 1900, in the case of Abram Gordon v. Edmund O'Brien, and in the case of Abram Eisenbud v. Edmund O'Brien, the said defendant, O'Brien, demanded on the return day of the summonses that the said actions be transferred to the Municipal Court of the City of New York, Borough of Brooklyn, Fourth District, that being the district in which the said O'Brien resided, and filed affidavits in support of such demand to the effect that neither of the parties to said actions resided in the Municipal Court of the City of New York, Borough of Manhattan, Second District; but the said Herman Bolte refused to grant the demand of said defendant, O'Brien, and refused to indorse such demand on the record of the case.

"Specification 3. That on the 30th day of April, 1901, in the case of Stromberg v. Jaffe, the said Herman Bolte wrongfully, oppressively, and illegally refused to receive and file the affidavits of the said Jaffe in support of his demand for a transfer of his case, and the said Jaffe was compelled to and did apply to the Supreme Court for a writ of mandamus directed to the said Herman Bolte, ordering and directing him to receive and file such affidavits; which said writ was granted by Hon. John J. Freedman on the 19th day of May, 1901.

"Specification 4. That on April 16, 1903, in the case of Philip Stromberg v. Pietra Ribecca, said Herman Bolte oppressively and illegally refused to sign an order to show cause to open the defendant's default on the trial of a traverse to the return of the service of the summons on the ground that 'he

did not like the affidavit of the said defendant to state any facts about the service of the summons.'

"Specification 5. That on the 9th day of October, 1901, in the case of Goldman v. Jacobs, in which Marks & Marks appeared as plaintiff's attorneys, the defendants duly demanded that the case be transferred to another district, which demand was denied by the said Herman Bolte, and which demand was not indorsed by him on the record of the said case, as required by section 2938, of the Code of Civil Procedure of the state of New York, and section 1347 of the consolidation act.

"Specification 6. That on the 5th day of December, 1901, in the case of Brinn v. Rinderman, in which Marks & Marks appeared as plaintiff's attorneys, the defendant duly demanded that the case be transferred to the Seventh District, on the ground that neither of the parties resided in the Second District Court, and filed affidavit in support of such demand; but said Herman Bolte denied the defendant's request, in violation of section 1370 of the Greater New York Charter.

## "Charge 11.

"That the said Herman Bolte willfully and corruptly abuses his powers as justice in allowing summonses to be filed with him personally on the return day of the summonses, notwithstanding the objection of the defendants, and in violation of rule 4 of the Municipal Court Rules of the city of New York, which requires summonses to be filed with the clerk of the court at least one day before the return day of the summons.

"Specification 1. That on the 16th day of April, 1903, in the two cases of Bresnick v. Shaw, the said Herman Bolte permitted Max S. Levine, hereinbefore mentioned, to file the two summonses in said actions with the said Herman Bolte personally after the call of the day calendar, notwithstanding the request of the defendant's attorney that said cases be dismissed on the ground that the summonses were not filed with the clerk of the court and the calendar fee paid to him the day previous to the return day, as required by rule 4 of the Municipal Court Rules.

## "Charge 12.

"That the said Herman Bolte willfully, partially, and corruptly abuses his power as a justice in granting adjournments to any of the attorneys hereinbefore named, in violation of rules 11 and 12 of the Municipal Court Rules, and to the prejudice of the other parties to the action.

"Specification 1. That the said Herman Bolte, in the case of Barnoff v. Jefferson Bank, in which Elias Rosenthal appeared as attorney for the plaintiff, and which was an action to recover the sum of $25, partially, oppressively, and illegally allowed the said plaintiff's attorney to adjourn the said case twelve times, notwithstanding the objections of the attorney for the defendant, until the case was finally tried on February 10, 1903, and dismissed on the ground that no cause of action had been proven.

"Specification 2. That on February 2, 1903, the said Herman Bolte partially and illegally allowed the aforementioned Aaron Morris to adjourn all his cases, about eight in number, in spite of the opposition of the attorneys for the other side, although no legal excuse for such adjournment was offered.

"Specification 3. That on February 6, 1903, in the case of Singer v. Stern, in which Max D. Steuer appeared as counsel for the defendant, the said Herman Bolte compelled the attorney for the plaintiff to wait all day, holding the case pending the arrival of Max D. Steuer. That at 3:30 o'clock in the afternoon of said day, Max D. Steuer not appearing, the plaintiff's attorney insisted and was allowed to take an inquest; the defendant and his attorney being present in court, but refusing to take any part in the inquest. That on February 10, 1903, a motion to open the default in the above case was granted by Herman Bolte, and that the case was then adjourned at the request of Max D. Steuer from day to day until March 5, 1903, when it was marked 'Ready,' and, on account of the absence of Max D. Steuer, was set down for March 6, 1903. That at 2 o'clock in the afternoon of said day Charles L. Hoffman, Esq., a partner of said Max D. Steuer, commenced to

try the case, which was again adjourned to March 10, March 11, March 17, and March 24, 1903, on which day it was finally tried before the said Herman Bolte privately in his private chamber, in violation of section 5 of the Code of Civil Procedure of the state of New York."

"Specification 5. And that in the case of Stromberg v. Ribecca, in which the above-mentioned Aaron Morris appeared as plaintiff's attorney, the defendant traversed the service of the summons, and the trial of the said traverse was set down for April 13, 1903, on which day the defendant and his witnesses waited in court until 1 o'clock in the afternoon, when the case was adjourned until next day at the request of the plaintiff, and on objection of the defendant and his attorney. That on the following day, April 14, 1903, the trial of the traverse was ordered to proceed, although the defendant's attorney asked the said Herman Bolte for a few minutes' time, explaining that defendant lived in Brooklyn, which request was refused. That the traverse was dismissed, and an inquest was ordered to be taken. That a few minutes after, and while the plaintiff was still on the witness stand, the said defendant appeared, and the said Herman Bolte refused to permit the defendant to testify on his own behalf, and refused to open the case for trial."

"Specification 7. That in the case of Goldberg v. Lahn et al., in which the above-mentioned Israel M. Lerner appeared as plaintiff's attorney, and which action was assigned to the said plaintiff, the said Herman Bolte, without legal grounds therefor, oppressively granted numerous adjournments to the plaintiff, about eight in number, in spite of the objections of the defendants' attorney, until the case was finally forced on for trial on the 2d day of March, 1903, when the case was dismissed, there being no cause of action proven.

### "Charge 13.

"That the said Herman Bolte willfully, corruptly, and maliciously, and in order to prejudice one of the parties of his legal rights, withholds his decisions on pending motions, and allows papers to be submitted to him after the argument of the motion, and without notice to the other side.

"Specification 1. That in the case of Stromberg v. De Salvo, in which Max D. Steuer appeared as attorney for the plaintiff, said Herman Bolte withheld his decision on the motion to open the defendant's default until the time for appeal had expired, and allowed the plaintiff to file affidavits with him after the argument of the motion, and without notice to the defendant or his attorney.

### "Charge 14.

"That the said Herman Bolte is incompetent and unfit to act as judge of the Municipal Court of the City of New York, in that his decisions are given with a view of pleasing his friends who appear as attorneys in the actions, and are not based on the law and evidence in the case.

### "Charge 15.

"That said Herman Bolte did at divers times during the year 1903, while sitting as justice of the Municipal Court of the City of New York, Borough of Manhattan, Second District, in the presence of suitors, counsel, and witnesses, repeatedly deport himself in a manner unseemly and indecorous, did repeatedly use language coarse and insulting, and treated counsel and witnesses in a manner coarse, vulgar, arbitrary, and tyrannical, calculated to intimidate and oppress said counsel and parties, and in other ways was guilty of conduct unbecoming a justice of the Municipal Court of the City of New York, which he held, and tending to bring the administration of justice into contempt and disgrace, to the great scandal and reproach of the said court.

### "Charge 16.

"That said Herman Bolte, while sitting as justice of the Municipal Court of the City of New York, Borough of Manhattan, Second District, issued ex parte orders in actions pending in other Municipal Courts, and on which other justices were presiding, in violation of law and of the due course and practice of the Municipal Courts, and in abuse of a just legal discretion.

"Specification 1. That on or about December 1, 1902, in an action pending in the Municipal Court of the City of New York, Borough of Manhattan,

Fifth District, wherein one Julius Blumberg was plaintiff and Elias Rosenthal and Jacob Greenburg defendants, the said Herman Bolte made a certain ex parte order in the words following, to wit:

" 'Municipal Court of the City of New York, Borough of Manhattan, Fifth District.

" 'Julius Blumberg, Plaintiff, against Elias Rosenthal & Jacob Greenburg, first name Jacob fictitious, etc., Defendants.

" 'Upon the annexed affidavit of Elias Rosenthal and all the pleadings and proceedings heretofore had herein, it is

" 'Ordered that the plaintiff submits his books for inspection containing the account of Rosenthal and Greenburg, Rosenthal and Rosenthal and Elias Rosenthal individually. And it is further

" 'Ordered that said books be produced at the office of Rosenthal and Brown, 404 Grand street, on Saturday, the 6th day of December, 1902, at 4 o'clock P. M. for inspection. And it is further

" 'Ordered that until such inspection and examination of the account be had that all proceedings on the part of the plaintiff, his attorney or attorneys, agent and agents, be and the same hereby are stayed.

" 'Dated New York, December 1, 1902.            Herman Bolte, J. M. C.'

"That there was no warrant in law for an order of inspection in the Municipal Court in such case.

## "Charge 17.

"That during the years 1900, 1901, 1902, and 1903 the said Herman Bolte, while acting as justice of the Municipal Court of the City of New York, Borough of Manhattan, Second District, was guilty of willfully, corruptly, and illegally allowing Philip Stromberg, Isaac Stromberg, Samuel Feinberg, Charles Ludwin, and Max Brinn, notorious installment dealers, continually to bring actions in the Second District Court and obtain judgments and executions against the body of the defendants, without due service of summons on the defendants, and of deciding cases in the favor of the above-named installment dealers, contrary to law and to the evidence in the case. That the said Herman Bolte did frequently during the trial of cases in which the above installment dealers were plaintiffs threaten the defendants that, unless they would pay the money due to said plaintiffs or return the goods to them, they would be sent to jail.

## "Charge 18.

"That the said Herman Bolte, justice of the Municipal Court of the City of New York, Borough of Manhattan, Second District, unmindful of the duties of his said office, and in violation of his oath of office, was guilty of malconduct in his said office in this, to wit: That the said office is one of trust and importance; that it is the duty of the said justice to conduct himself therein with decorum, and to perform his judicial duties with such a careful regard to the rights of parties in causes pending in the said court and before him as a justice thereof as to inspire respect for the court and just confidence that causes therein were and would be decided on their merits, and without partiality. Nevertheless, the said Herman Bolte so conducted himself in making the decisions and orders particularly specified in the foregoing charges and specifications and in making other decisions and orders in actions pending in said court and before him as to excite fear and distrust and inspire a widespread belief in the city and county of New York that causes were not uniformly decided in the said court according to their merits, but were decided corruptly and partially, whereby the citizens of the city and county of New York have lost their confidence and respect for the said court, and felt insecure in the enjoyment of their civil rights and property under the law, to the destruction of the usefulness of the said Herman Bolte in said office as justice of the Municipal Court of the City of New York, Borough of Manhattan, Second District, and to the great scandal and reproach of the said court."

The first hearing before the referee at which evidence was taken was on the 18th day of July, and the taking of evidence closed on the 10th day of December, after many sessions. Briefs were then exchanged, and the case

was argued and submitted before the referee. The referee filed the evidence and his opinion on the 23d day of March. He recommends the dismissal of the fifth charge as trivial, and the seventh, ninth, and thirteenth as not proven; but reports that the others are sustained by the evidence upon one or more of the specifications. The proceeding was then brought on for final hearing before this court on the 6th day of May, 1904.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Wheeler H. Peckham and Howard S. Gans (William B. Hornblower, William N. Cohen, and John H. Islin, on the brief), for petitioner.

Maurice B. Blumenthal, for respondent.

LAUGHLIN, J. The motion to dismiss the charges collectively and separately was in the nature of a demurrer on the ground that the facts stated, if proven, would not warrant the removal of the respondent. The denial of the motion and the order of reference necessarily involved an adjudication that, if all the charges were true, they would justify his removal; but they do not necessarily constitute an adjudication that any one or more of the charges standing alone would be sufficient. Many of the charges are connected, and have a material bearing upon one another. One, therefore, taken by itself, might be wholly insufficient, but, taken with others, might be convincing evidence that the respondent was unfit to hold a judicial office. It therefore becomes necessary at the outset to consider the authority of this court to remove city magistrates, and the grounds upon which it may be exercised. Section 18 of article 6 of the state Constitution of 1846, amended in 1869 and readopted in 1894 as section 17 of the corresponding article, provides that "justices of the peace and judges or justices of inferior courts not of record, and their clerks may be removed for cause after due notice and opportunity of being heard, by such courts as are or may be prescribed by law." The Legislature vested this power of removal in the General Term of the Supreme Court (chapter 354, p. 521, of the Laws of 1880); and with the abolition of the General Term this authority and duty devolved upon the Appellate Division in the district where the judge or justice was elected or appointed (article 6, § 2, State Const.; section 220, Code Civ. Proc.; section 1383, Rev. Charter Greater N. Y., being chapter 466, p. 589, Laws 1901). By virtue of these provisions of constitutional and statutory law the respondent may be removed for any misconduct in office or willful neglect of duty. A judicial officer may not be removed for merely making an erroneous decision or ruling, but he may be removed for willfully making a wrong decision or an erroneous ruling, or for a reckless exercise of his judicial functions without regard to the rights of litigants, or for manifesting friendship or favoritism toward one party or his attorney to the prejudice of another, and to the destruction of his usefulness as a magistrate through the loss of public confidence in his fairness or integrity.

The respondent was 58 years of age. He is a graduate of the

public schools of the city of New York, of Goldsmith's Business College, of Columbia University; took a course of one year in civil law at Heidelberg University, and was admitted to the bar in 1874. He was elected a justice of the District Court of New York in 1893, and of the Municipal Court, Second District, in 1899. It is not claimed that he was incompetent, nor could it well be, for his judgment was mature, he was well educated, and possessed of sufficient legal learning.

The charges were prosecuted by counsel for the petitioner with industry, energy, and ability. The respondent was ably defended by counsel whose loyalty merits the commendation of the court. The parties had a fair, patient, and exhaustive hearing before the referee. The testimony covers 3,307 pages of typewriting. The learned referee impartially and intelligently reviewed the evidence in a report of 326 pages, giving the respondent the benefit of every reasonable doubt. His painstaking labors, carefully performed, simplified the work of counsel and of the court. The case has received the consideration and deliberation by the court that its importance to the public and its consequences to the respondent demand. The charges and specifications were clear and definite; and, in view of the exhaustive analysis and discussion of the evidence by the learned referee, we do not deem it either necessary or profitable to review the testimony in detail or at great length. We will merely comment on the evidence briefly, and state our conclusions upon its sufficiency to sustain the charges.

The second charge differs quite materially from the others, and will be considered first. It presents the question as to whether the respondent has ceased to be an "inhabitant" of the district, and, if so, whether that is "cause" for removal. Section 1353 of the Greater New York Charter (Laws 1901, p. 576, c. 466) provides that a Municipal Court justice shall be "a resident and elector" of the district for which he shall be elected or appointed; that he shall not engage in any other business or profession, or hold any other office, or act as a referee or receiver, but shall devote his entire time to the performance of his official duties. The public officers' act (chapter 681, p. 1656, Laws 1892) provides that every office shall be "vacant" before the expiration of the term thereof upon the incumbent's ceasing to be an "inhabitant" of the political subdivision of which he is required to be a "resident" when elected or appointed. The respondent was eligible for the office when elected and when he qualified and entered upon the performance of his duties, but it is claimed that he thereafter moved to White Plains, N. Y. His counsel contends that this question can only be determined by a quo warranto proceeding. In overruling the respondent's motion to dismiss this charge, I think we have decided that he may be removed on this ground, and I am of that opinion now. It is not entirely clear, in these circumstances, that the respondent, who was eligible and duly elected and qualified, could be removed from the office by quo warranto upon the ground that he subsequently ceased to be an inhabitant of the district. State v. Gardner, 43 Ala. 234. But see, also, People ex rel. Hodg-

kinson v. Stevens, 5 Hill, 616; State v. Wilson, 30 Kan. 661, 2 Pac. 828. However that may be, I am of opinion that this court has authority, either exclusively of or concurrently with the remedy by quo warranto, to remove the respondent upon this ground. The purpose of the statute was to require him to remain in the district where he had been elected, to the end that he could be readily found at all reasonable hours by those who had applications to make to him in his official capacity, and to avoid inconvenience to attorneys, litigants, and witnesses occasioned by his voluntary absence or delays incident to transportation. By moving out of the district his constituents are deprived of this right, and he is guilty of neglect of his duty to remain in the district where he would be accessible. Since he has taken up a residence at White Plains he arrives at the courthouse late mornings, and ordinarily departs on an hour in the afternoon altogether too early for the proper performance of his duties and for the convenience of litigants and their attorneys and witnesses. In a sense, therefore, the charge is of the same nature as many of the others. The authority of the court to act is, perhaps, not upon the ground that the respondent is merely a de facto officer, but because he has violated his statutory duty to remain an inhabitant of the district so long as he exercises the functions of his office, and in so doing has failed and neglected to properly perform the duties of his office. The respondent doubtless did not intend to give up his residence in the district or to forfeit his office, but his intent is of little consequence in determining the question whether he has been guilty of neglect of duty or has ceased to be an inhabitant of the district, which has reference to his abode or domicile as distinguished from his legal residence. The evidence fairly warrants the inference that he became an inhabitant of White Plains. He is not merely sojourning there temporarily, but he has procured and taken up a permanent abode there. This charge is therefore fairly sustained, and, while we might hesitate to remove the respondent upon it alone, yet it is important in connection with other charges which we also deem established.

The evidence also fairly sustains the first charge. In consequence of the respondent's taking up his abode in White Plains, he was unable to transact any ex parte or other business until 9:30 in the morning. Section 17 of the Municipal Court Act (chapter 580, p. 1495, Laws 1902) provides that court shall be held by the justices of each district "at such hours in every judicial day or so often as the board of justices of the Municipal Court shall direct, and must continue in session so long as the public interested requires." Rules of the Municipal Court, enacted pursuant to authority conferred by section 12 of the Municipal Court Act, prescribe that court shall be held "on Monday, Tuesday, Wednesday, Thursday and Friday of each week, except in those districts where the justice elected or appointed therein shall otherwise direct," and that "court shall open at ten o'clock a. m." These rules were first adopted pursuant to law in 1897, and were readopted on the 19th day of June, 1902, after the passage of the Municipal Court Act.

The rules thus enacted have the force of law, and are binding upon the individual justices. Matter of Moore, 108 N. Y. 280, 15 N. E. 369. The respondent did not observe these rules. He opened and adjourned his court at hours that suited his own convenience, without regard to the inconvenience and expense to which others were thereby daily subjected. It was the rule, rather than the exception, that he did not open court at 10 o'clock, and it was not an infrequent occurrence that he adjourned court early in the day, when trials ready to be proceeded with were pending before him, and when he had a congested calendar, requiring that trials be progressed as rapidly as possible. In that court there is always a large attendance of attorneys, litigants, and witnesses. The law provides that their convenience requires that the court should be opened promptly at 10 o'clock in the morning. This rule should be strictly observed. During several months in 1902 and 1903, while the respondent was living at White Plains, he ordinarily devoted Wednesdays to reading evidence, examining briefs, and deciding cases, doing the work at his private office, No. 3 Chambers street. He, however, allowed actions and proceedings to be made returnable on and adjourned cases to those days, necessitating the attendance of great numbers of attorneys, litigants, and witnesses. The respondent was not indolent. He worked hard, and often held court on Saturday, when, under the rules, he was not obliged to do so; but he willfully disregarded the court rules and the rights of litigants, their attorneys and witnesses, concerning the days and hours for holding court.

The fourth charge alleges a violation of section 63 of the Code of Civil Procedure in permitting those not attorneys to practice in the Municipal Court. By virtue of that section only attorneys and counselors of courts of record are permitted to practice in the Municipal Courts of New York, and a justice who knowingly permits a violation is guilty of a misdemeanor. It satisfactorily appears that one Max Levine, not an attorney, as the respondent well knew, not only was permitted to practice in the respondent's court for years, as often as he liked (which was quite frequently), but also after the specific objection had been taken that he was not an attorney and authorized to so practice. These facts are also important in connection with the charges of favoritism toward this same individual. The referee, in reaching the conclusion that the specification was not sustained in so far as it relates to the respondent's permitting Isaac Brinn, not an attorney, to practice, was more considerate toward the respondent than the facts warranted. The evidence shows that the respondent, knowing Brinn not to be an attorney, permitted him to practice quite generally, the same as Levine.

Counsel for the petitioner agreed that the fifth charge—that the respondent permitted clerks whose certificates had not been filed to answer at the call of the calendar—is trivial as reported by the referee. Without examining the evidence or expressing an opinion thereon, this charge should therefore be dismissed.

The facts upon which the sixth, eighth, twelfth, and fourteenth

charges are based are of the same general nature, and are so inter-woven that they will be considered together. They allege par-tiality, favoritism, corruption, and the abuse of judicial discretion in the conduct and decision of cases. The referee recommends that they be all sustained except the specification of favoritism towards Max D. Steuer and Israel M. Lerner, and that the favoritism was not habitually exercised, except in favor of Aaron Morris. There is no evidence that the respondent received or accepted any pe-cuniary benefit other than his salary for any of his official acts, and we believe that he did not. We are, however, convinced by the evidence that he often allowed his friendships and prejudices to influence, and at times to control, his rulings and decisions. Judicial action and discretion were frequently arbitrarily exercised favorably to particular attorneys and suitors, with no considera-tion of the claims or rights of the adverse party or opposing at-torney. This abuse of judicial discretion was oppressive, and the discontinuance or settlement of litigation was not infrequently coerced thereby. The official conduct of the respondent became a judicial scandal. In January, 1903, the East Side Civic Club em-ployed an attorney to observe and investigate it. The attorney thus employed visited the court daily for a long period of time, and presented accurate and valuable information with respect to the proceedings, and especially concerning the respondent's hours upon the bench. Abuses of judicial process in the respondent's court by secondhand dealers in bringing actions and obtaining judgments, upon which body executions issued without personal service of process, was brought to the attention of the Italian Consul, who, together with prominent Italian attorneys, presented the matter to the respondent. It also appears that attention was drawn by the public press to certain abuses in the respondent's court. The con-duct of the respondent cannot be excused for want of knowledge of the law or of his duty. His misconduct was deliberate and will-ful. In one instance, after a case had been twice tried and twice reversed on appeal, and the law of the case had been settled against the party whom the respondent was favoring, and after the parties had been required to attend upon the trial on almost innumerable adjournments, the respondent stated from the bench that he was in a better position than the Appellate Term to determine the law of the case, and openly declared that he could not give a judgment for the party who was clearly entitled thereto under the decision of the Appellate Term, and arbitrarily and without authority and against objection transferred the case to another district. The fa-voritism of the respondent to particular attorneys and particular parties was manifested by repeated adjournments of cases against objection, and without necessity or cause shown as required by the court rules, which it was his duty to observe, and refusing like favors to the adverse party; by arbitrarily controlling the action of the stenographer, whose duties are in all respects similar to those of a Supreme Court stenographer, and refusing to allow ob-jections or exceptions to be noted, in consequence of which an appeal would be futile; by omitting evidence, objections, and ex-

ceptions from returns on appeal; by granting, without authority, ex parte orders in actions pending in other districts; by making, on ex parte application, or of his own motion, illegal entries and alterations in court records and papers; by adding causes to the calendar in direct violation of a rule of the court binding upon him; by asserting and exercising jurisdiction when it had been shown on a traverse to the marshal's return of service that process had not been served; by refusing to grant judgments on verified complaints in default of verified answers; by assuming to dispose of cases not upon the clear legal rights of the parties as presented, but upon his notions of equity; and by consulting privately with counsel or with parties on one side concerning the disposition of an application pending or to be made. Favoritism in the performance of judicial duties constitutes corruption as disastrous in its consequence as if the judicial officer received and was moved by a bribe. If the respondent was actuated by a desire to favor his friends in matters resting in discretion, it is not at all unlikely that his decisions were likewise influenced, although obviously that could only be shown by circumstances. The willful abuse of judicial discretion is the most oppressive and injurious kind of official misconduct. The parties prejudiced may obtain redress on appeal from an illegal ruling or decision upon a question of law, even though the judge acted corruptly and knew that his ruling or decision was wrong; but even for the extreme exercise of judicial discretion by an inferior court there is little or no redress to the litigant whose rights have been violated or ignored, for he has no adequate remedy. The bias and prejudice of the respondent was often manifested openly, and was calculated to and did impair public confidence in his integrity and fairness as a judicial officer. These charges are amply sustained by the evidence, and they not only justify, but inevitably require, the removal of the respondent.

The seventh charge alleges willful insubordination, and it involves the attitude of the respondent towards the decisions of the appellate courts and his refusal to follow them. Although the referee thinks the respondent should be exonerated on this charge, except in so far as it is embraced in the charges of favoritism, and it is not pressed by counsel for petitioner, we are disinclined to pass, without notice, the attitude of the petitioner towards the courts constituted by law to review his decisions. It at least deserves severe censure.

The ninth charge alleges that the respondent connived at the bringing of actions in his court which belonged elsewhere. The referee deemed the evidence insufficient to sustain the charge. The practice of assigning claims so that actions may be brought in a particular district for the convenience of the attorneys who are to have charge thereof undoubtedly exists; but that alone does not invalidate the assignment of the cause of action. The practice ought not to be encouraged, but the evidence does not connect the respondent with any of the assignments, and we are therefore also of opinion that the charge should be dismissed.

The tenth charge alleges that the respondent corruptly refused

to allow actions to be removed to the City Court and to transfer actions to other District Courts. In actions in the Municipal Court, where damages exceeding $250 are demanded, the defendant, at his election, after issue joined, and before adjournment, and upon giving an undertaking as therein provided in an amount to be fixed by the court, not exceeding twice the amount demanded, is entitled to an order transferring the case to the City Court. Section 1366 of the Greater New York Charter (Laws 1901, p. 581, c. 466), and section 3 of the Municipal Court Act (Laws 1902, p. 1490, c. 580). If an action is brought in the Municipal Court in a district in which neither party resides, it must be transferred to the proper district if the defendant so demands upon or before joinder of issue. Section 1370, Greater New York Charter (Laws 1901, p. 584, c. 466), and section 25 of the Municipal Court Act (Laws 1902, p. 1497, c. 580). The referee has sustained three of the specifications under this charge. One relates to the respondent's refusal to allow a case to be removed to the City Court, and the other two relate to his refusal to transfer cases to other District Courts. Counsel for petitioner cites evidence tending to support other specifications not sustained by the referee. The evidence fairly sustains one specification relating to a refusal to allow a removal and another relating to a refusal to allow a transfer. Standing alone, we would hesitate to hold this charge sufficient to require the removal of the respondent, but the evidence adduced thereunder indicates that his judicial action was the result of favoritism, and we think it highly probable that the respondent was influenced to retain the cases in his court by friendship for the party or attorney opposing the removal or transfer.

The eleventh charge relates to placing cases upon the calendar where the return of service of process had not been made within the time prescribed therefor. Rule 4 of the Municipal Court Rules, duly adopted and binding, provides that, to entitle a case to go upon the calendar, the summons must be returned to the clerk's office the day before it is returnable. This is an eminently proper rule, and is calculated to facilitate the timely making of a calendar for the convenience of the parties and their attorneys. It is evident, in view of this rule, that, if the return of service be not filed in time, the defendant would be justified in assuming that the case had been withdrawn or discontinued. At any rate, the rule was binding on the respondent, and he did not observe it. He not only added cases to the calendar in violation of the rule, but added cases to the calendar after the return hour of the summonses had expired and the regular calendar had been called; and did this on one occasion against the objection of the attorney for the defendant, who happened to be in court, and on another occasion without any appearance for the defendant. The respondent frankly admits that he suspends this rule whenever he deems it proper. Some, if not all, of these acts of misconduct were committed for the purpose of favoring his friends.

The thirteenth charge alleges the withholding of decisions on motions and the reception of papers ex parte. It is not sustained

by the referee, is not urged by counsel for petitioner, and should be dismissed.

The fifteenth charge alleges deportment unbecoming a justice of the Municipal Court. The eighteenth also relates to his deportment and the effect upon spectators and on the community. These two charges may therefore be properly considered together. The referee recommends that they both be sustained, and we are of opinion that they are fairly supported by the evidence. The respondent, while on the bench publicly exercising judicial functions, has at times been guilty of conduct and given public utterance to sentiments not only highly undignified, but showing prejudice against classes of attorneys and litigants on account of their nationality; and also a determination to conduct judicial proceedings arbitrarily and despotically, and willfully refusing to accord to parties or their attorneys their clear constitutional and statutory rights. If these charges and the evidence adduced thereunder stood alone, we might, in view of the volume of business pending before the respondent and the trial upon his patience incident to calendar calls, the adjournment of causes, and the impertinence at times of attorneys, deem it sufficient to express condemnation, and reprimand the respondent, without removing him. The demeanor of the respondent on the bench has occasionally, at least, been domineering and tyrannical. He has been disrespectful and abusive to members of the bar without cause. His conduct in this regard was not merely the manifestations of temper which might be excused for cause, but the only provocation was opposition to the desires of his friends with reference to the conduct or disposition of their cases.

The sixteenth charge and specifications thereunder allege acts of oppression in granting illegal ex parte orders in actions pending in other District Courts. Rule 15 of the Municipal Court Rules provides that ex parte applications may be made to any justice. This rule only authorizes applications in actions pending in one district to a justice of another district for such orders as may be granted by a justice as distinguished from the court. It is not authority for such applications when the order may only be granted by the court. The court in each district is separate and distinct from the court in each other district, and it is manifest that there should be no interference by one judge with matters pertaining to the court in another district. The only authority for ordering the exhibition of a writing or account declared on in an action in the Municipal Court is contained in section 165 of the Municipal Court Act, and it is conferred upon the court, and not upon a justice. It does not authorize the examination of books as by a bill of discovery. That is not within the jurisdiction of the Municipal Court. The extension of the practice in the courts of record to the Municipal Court by section 20 of the Municipal Court Act was merely intended to regulate the practice in matters over which the Municipal Court has jurisdiction. The order granted ex parte by the respondent in an action pending in another district requiring the plaintiff to deliver his books at the office of the defendants, a firm

of attorneys—to one of whom respondent had previously shown favoritism—for inspection, being an order that could only be granted by the court, was wholly unauthorized. Section 255 of the Municipal Court Act authorizes the opening of defaults or omissions on such notice as the court may direct which clearly contemplates an order by the court in which the default was taken. Rule 15 provides that such motions may be brought on on three days' notice. Within a few minutes after default was taken in another district, the respondent, at the instance ex parte of Levine—the party whom he allowed to practice without a license—issued an order to show cause why a default taken in another district should not be opened returnable in the proper district, but in seven days, and staying proceedings on the judgment in the meantime. The order was served within 20 minutes of the time the default was taken. The day before the time expired, the respondent, ex parte on the same affidavits, extended the stay and the return day of the order another week. In another case the plaintiff and his attorney were favorites of the respondent, and he had issued an order of arrest against the defendant on a judgment by default. The summons was not in fact served, although there was a claim of service. Extortion was practiced upon the defendant in the meantime, but without respondent's knowledge. Respondent was no longer holding court in that district. A motion to vacate the order of arrest on the ground of fraud and lack of jurisdiction was made returnable before the court in the district, then presided over by another justice. The respondent, before the order was returnable, but on the same morning, on the ex parte application of plaintiff's attorney, marked the judgment satisfied. If this flagrant usurpation of authority had not been for the benefit of the parties toward whom the respondent was shown to have exercised favoritism on many other occasions, it might be excused on the theory that the evidence is susceptible of an innocent construction, and that the respondent may have believed that he was authorized to do these things. The evidence, however, is convincing that he knew that he was exceeding his authority, that he was moved by a desire to favor his friends, and was blind to the rights of their adversaries.

The seventeenth charge alleges that the respondent, actuated by desire to favor certain plaintiffs, granted judgments and body executions without due service of process and contrary to law. The referee reports, and we find, that the evidence fairly sustains this charge in two instances only. In these cases, also, were it not for the favoritism shown the plaintiffs previously, we might exonerate the respondent on the ground of mistake in interpreting the law; but his desire to favor them was so great that he acted arbitrarily and recklessly. If he had been impartial, it is impossible to believe that he would not have exercised greater care in taking defaults on causes of action where body executions could be issued, and have been more considerate on applications to open such defaults. He now says that he knew—and his training and legal education should have informed him—that he had no jurisdiction to enter a judgment against a party without personal service of

process; and yet he had no patience with parties traversing a return of personal service and showing a service upon some other member of the household; and openly declared that it was not essential that personal service be made if the party for whom process was intended ascertained that it had been served upon another. The claim is made, and the evidence indicated that it is not improbable, that an infamous practice exists on the part of some secondhand dealers who sell property on installments to bring actions charging fraud and obtain judgments by default without personal service of the summons, and then issue body executions, and thus coerce settlement, even though the defendant may have had a defense. When a claim of the kind was presented to the respondent—as many were—it was entitled to prompt, thorough, and impartial consideration and investigation, which it did not receive.

We therefore find all the charges sustained upon one or more specifications, except the third, fifth, seventh, ninth, and thirteenth. We are convinced that the respondent has not the proper judicial temperament, nor has he a proper appreciation of the rights of litigants to have a fair and impartial hearing. The interests of the public forbid that his official misconduct be condoned, and require his removal.

It follows that the respondent should be adjudged guilty of the charges as stated, and should be removed from the office of justice of the Municipal Court, Second District, Borough of Manhattan, New York. All concur.